## OFFENSES UNDER THE LIQUOR LAW.

Common Pleas Court of Stark Countty.

DATESH v. STATE (two cases), ROSE v. STATE, MARKLING & SCHATZMAN v. STATE, GLASER v. STATE, TROMMENSCHLAGER v. STATE, MARGO & EVERETT v. STATE, MOZEA v. STATE, VEST.MEAN v. STATE.[*]

Decided, May Term, 1920.

*Prosecution for Sale of Intoxicating Liquor—Sufficient if the Affidavit States That the Sale was Unlawful—What the Phrase "In Violation of Law" Comprehends—Second Offense Can not be Charged While Prosecution for the First Offense is Pending—Authority to Abate the Place as a Nuisance Does Not Entitle Defendant to a Jury Trial—Review of Case Trial Without Intervention of a Jury— Weight of Evidence—Violation of Order Separation of Witnesses.*

1. A judgment of the court rendered in a criminal trial, without the intervention of a jury, is to be treated on review as to the weight of the evidence according to the same rules that apply to a verdict by a jury; that is, the judgment can not be reversed unless manifestly against the weight of the evidence.

2. Where the evidence is conflicting a reviewing court will always hesitate to set aside a verdict or reverse a judgment unless the same is manifestly against the weight of the evidence; and such judgment or verdict should not be reversed or set aside merely because there is an apparent conflict in the testimony.

3. Section 9 of Article XV, of the Ohio Constitution as amended, which went into effect in Ohio May 27, 1919, provides that: "The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The General Assembly shall enact laws to make this provision effective. Nothing herein contained shall prevent the manufacture or sale of such liquors for medicinal, industrial, scientific, sacramental or other non-beverage purposes." These prosecutions are brought under Section 13195, General Code, against the plaintiffs in error for keeping a place where intoxicating liquors are sold, furnished or given away in violation of

[*] Affirmed by the Court of Appeals, September Term, 1920, without written opinion but on the grounds and for the reasons contained in the opinion of Judge Day; case not taken to the Supreme Court.

law. The phrase "in violation of law" comprehends a violation of the state prohibition amendment to the Ohio Constitution. The Constitution being the supreme law, the words "in violation of law" would include the constitutional provision. It is not important what law is violated in the sale of intoxicating liquors under a charge of this character.

4. It is sufficient for the affidavit to state that the sale was unlawful, and then in the hearing of the case proof can be offered that the sales were made on Sunday, to a minor, in prohibited territory, or *any other* reason that renders the sale unlawful; and, therefore, a sale in violation of the Constitutional Amendment renders the same unlawful and thus in violation of law. If such sale is in violation of the Constitutional Amendment it is made "in violation of law." The Constitutional Amendment became effective May 27, 1919, and thereafter whoever sold or furnished liquor or gave away the same as a beverage did so in violation of law and he became liable under General Code, Section 13195 to the penalties thereof; and the Constitutional provision is to the extent mentioned self executing.

5. A second offense can not be charged and maintained against one who has been convicted of one offense, where the case involving the first offense has not been finally determined, but is pending in a higher court on error. In such case where the penalty imposed for the alleged second offense was greater than legally possible for a first offense, it is the duty of the reviewing court to remand the case to the trial court for sentence as for a first offense.

6. Where imprisonment is no part of the penalty, the fact that the court may, under the statute, order an abatement of the place as a nuisance, does not entitle the defendant to a jury trial.

7. The trial court is vested with discretion to refuse or permit the examination of a witness who has remained in court by procurement or connivance of the party calling him in violation of an order for the separation of witnesses.

*American & Mills, Leahy & Snyder, Frank Sweitzer*, and *Charles Weintraub*, of Canton, for plaintiffs in error.

*Clarence A. Fisher*, of Canton, *J. A. White* and *Chas. M. Earhart*, of Columbus, for State

DAY, J.

In the above named cases error has been prosecuted to the criminal court of the city of Canton, wherein the plaintiffs in error seek to reverse the judgment of that court, finding them guilty of violation of the liquor laws of the state.

These cases involve practically the same questions and were presented by counsel in argument at the same hearing, and the court will group them, insofar as the law is concerned.

In each case the defendant is charged with having violated G. C. Section 13195, which recites in substance as follows:

"Whoever keeps a place where intoxicating liquors are sold, furnished or given away in violation of law, shall be fined not less than one hundred nor more than five hundred dollars, and, for each subsequent offense shall be fined not less than two hundred dollars nor more than five hundred dollars. The court, on conviction for a second or subsequent offense, shall order the place where such liquor is sold, furnished or given away in violation of law, to be abated as a nuisance, or shall order the person convicted of such offense to give bond payable to the State of Ohio in the sum of one thousand dollars, with sureties to the acceptance of the court, that such person will not sell, furnish or give away intoxicating liquor in violation of law, and will pay all fines, costs and damages assessed against him for violation of the laws relating to the sale of intoxicating liquors. The giving away of intoxicating liquors, or other shift or device to evade the provisions of this section, shall be unlawful selling."

An examination of the record in each case discloses that the various defendants made motions and demurrers, and upon convictions filed motions for new trials and in short, saved every legal question in every way known to criminal practice; but a comparison of the various cases and a consideration of the questions presented amounts to about this: Is the judgment of the court below in each, any or all of the cases presented against the manifest weight of the evidence Second, assuming that there was a sale, furnishing or giving away of liquor, does the evidence disclose that the defendants were keepers of a place where intoxicating liquors were sold, furnished or given away in *violation of law?* Third, in those cases wherein a second offense is charged, is there in contemplation of the law a second offense, so long as the first offense is pending on error to determine the fact as to whether or not the act complained of is an offense at all? Fourth, was it error to deny a jury trial to certain of the defendants?

Without reviewing in detail the evidence in the separate cases, it has been carefully considered, and from an examination of the records in the several cases I have reached the conclusion that in each of them there is sufficient evidence to warrant the judgment of conviction by the criminal court.

I have considered the question simply from the standpoint of a reviewing court as to whether or not each and all of these records have sufficient therein upon which the trial court having heard the witnesses and seen them, weighed and considered their testimony, in the light of their demeanor, manner of testifying, the appearance, conduct of the accused upon the stand and their testimony, and the various witness, to warrant the conviction, or more properly whether the conclusions of the court below were manifestly against the weight of the evidence, and that the judgments should be set aside therefor. The rule for a reviewing court in a criminal case has been set down by our Supreme Court and by the Court of Appeals in the following cases:

*Stewart* v. *State,* 1 O. S., 66 (77):

"I have, I believe, waded through all the objections taken for the plaintiff in error. While the courts should take care that persons accused of crimes are secured in all their legal rights, it is due to the community to see that those substantially charged with crime, and found guilty, should not escape punishment by reliance upon technicalities and forms, multiplying the chance and holding out the prospect of immunity to guilt as an inducement to venture in the commission of crime. We see no error in the proceedings of the court in the case before us."

*Hess* v. *State,* 5 Ohio, 5:

"The especial assignment of error is that 'the verdict of the jury is without evidence and contrary to the evidence of the case.' If we can consider this assignment at all, it is sufficient to say that the verdict was not without evidence, nor contrary to the evidence, certainly not clearly so."

*McGatrick* v. *Wason,* 4 O. S., 566:

"Should we disturb the finding? If it is clearly wrong we must do so. If we can only doubt its correctness we must let

it alone. In *French* v. *Milliard*, 2 O. S., 53, this court said: 'We are not satisfied that the verdict of the jury was right, but this is not enough. A mere difference of opinion between the court and the jury does not warrant the former in setting aside the finding of the latter. That would be in effect, to abolish the institution of juries, and substitute the court to try all questions of fact. It must be clear that the jury has erred before a new trial will be granted, on the ground that the verdict is against the weight of the evidence.' "

*Dean* v. *King*, 22 O. S., 118 (134):

"A verdict of a jury should not be set aside by the court to which it is returned on account of any mere difference of opinion between the judge and the jury as to the weight of the testimony, but only when the verdict is unsupported by or is against the decided weight of the evidence (citing 5 Ohio, 245; 12 O., 151; 2 O. S., 44; 4 O. S., 566), and if the motion for a new trial be overruled, a reviewing court should not reverse unless the verdict (or finding of the fact if the jury be waived) is so clearly unsupported by the weight of the evidence as to indicate some misapprehension, or mistake, or bias on the part of the jury, or a wilful disregard of duties."

See also *L. S. & M. S. R. R. Co.* v. *Goodwin*, 12 C. D. 537; and *Neifield* v. *State*, 23 C. C., 246:

"The question of fact involved here was submitted to the court. It is true there is a direct conflict in the evidence. Daley, testifying what he claims about it on the one hand, and is contradicted by Neifield on the other. That is not sufficient to warrant a reviewing court in finding that the court below erred in finding beyond a reasonable doubt that Neifield was guilty of the offense charged. If that were true, a great many criminal cases would have to be reversed on the ground that the judgment was not sustained by sufficient evidence. The court before whom the case is tried has an opportunity to see the witnesses, and observe their conduct on the witness stand, their candor or want of candor, and has a much better opportunity of reaching a just conclusion and determining where the truth really lies, than a court that knows nothing about the case except what appears on the written record. This rule has been recognized in *Brease* v. *State,* 12 O. S., 146."

See *Price* v. *Coblitz*, 21 O. C. C., 732, as authority for the following:

"A verdict will not be reversed on account of the admission of irrelevant testimony which had no bearing on the case, if such testimony was not prejudiced."

*Gebaur* v. *Vesper*, 20 O. C. C., 711 (10 C. D., 820), and *Andrews* v. *Johnson*, 12 C. D., 692, support the following:

"*A judgment of the court without the intervention of a jury* is to be treated on review as to weight of evidence, according to the same rules that apply to a verdict by jury—that is, the judgment can not be reversed unless manifestly against the weight of evidence." · (Italics ours.)

See also, 17 C. C., 486, as authority for the following:

"Where the evidence is conflicting, the judgment of the police court judge unless manifestly against the weight of the evidence, will not be disturbed by a reviewing court."

See *Evans* v. *State*, 3 C.C.(N.S.), 23, affirmed · by the Supreme Court without report, 68 O. S., 700, *Baum* v. *State*, 6 C.C. (N.S.), 515.

Commenting on the conflict of evidence in a criminal case, Judge Peck in *Breese* v. *State*, 12 Ohio St., 146-156 (80 Am. Dec., 340) said:

"The jury who try a cause and the court before which it is tried, have much better opportunities to determine the credibility and effect of the testimony, and we ought therefore, to hesitate before disturbing a verdict rendered by a jury and confirmed by a court, possessing such advantages, merely because there is an apparent conflict in the testimony."

And the court in that case, held, that,

"A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony."

"Applying the rule of law above stated to the evidence presented in this case, we find no sufficient ground to warrant us interfering with the verdict rendered."

The court of appeals of this district laid down the rule for

disturbing verdicts in a criminal case, in *Andy* v. *State,* 36 O. C.C., 146 (19 C.C.(N.S.), 93, 94; 2 O. App., 103): ·

"And as a reviewing court keeping in mind the rule that the verdict of the jury should not be set aside unless it is manifestly against the weight of the evidence, we are of the opinion that the record presents a case which does not require this court to interfere with the verdict of the jury on the ground stated,"

The court trying the case has the very great advantage of seeing the witnesses, hearing their testimony, observing their demeanor and reaching a conclusion upon not only the spoken words of the witness, but his manner of testifying, his appearance and his general conduct, all of which aid the court in reaching a conclusion as to what weight should be given his testimony.

Now, the rule in a criminal case. is that the evidence should satisfy the mind of the trier with the guilt of the accused beyond a reasonable. doubt before a judgment or verdict so finding could be lawfully rendered. The Supreme Court of Ohio has held that in human affairs absolute certainty is not always attainable and from the nature of things, reasonable certainty is all that can be attained upon many subjects. When a full and fair consideration of all the evidence satisfies the mind to a reasonable certainty of the guilt of the accused, it is the duty of the court to so find. Of course, whenever there is only a strong probability of the guilt of the accused, it is the duty of the court to acquit.

From a careful reading of each of these records I have reached the conclusion that while the evidence is conflicting in all the cases, yet I can not say that the rule of the Supreme Court as to reversing criminal cases will permit me to do aught else than to deny the petitions in error so far as the question as to weight of the evidence is concerned.

· One of the basic questions in all of these records, and a question common to all plaintiffs in error is whether or not the Constitutional Amendment which went into effect May 27th, 1919, is self-executing; or, to state the proposition somewhat differently, whether a sale made after May 27th, 1919, in the State

of Ohio, of intoxicating liquor, is "in violation of law" because it is contrary to Section 9 of the Amendment referred to, even though the General Assembly failed to enact laws "to make this provision effective." Again, is such a sale *unlawful* because it violates the Constitutional Amendment, and hence, in violation of law under Section 13195, even though the Legislature has not enacted laws "to make this provision effective" as provided in Section 9 of the Amendment? This Constitutional Amendment is as follows:

Article XV, Sec. 9. "The sale and manufacture for sale of intoxicating liquors as a beverage, are hereby prohibited. The General Assembly shall enact laws to make this provision effective. Nothing herein contained shall prevent the manufacture or sale of such liquors for medicinal, industrial, scientific, sacramental, or other non-beverage purposes."

As above noted, the Legislature has not enacted laws "to make this provision effective," and it is the contention of the State that when Section 13195, General Code, says "in violation of law" it comprehends a violation of the State Prohibition Amendment, to-wit, the section of the Constitution just cited.

An excellent statement as to whether or not a provision of a Constitution is self-executing is found in 12 C. J., page 729:

" It is within the power of those who adopt a constitution to make some of its provisions self-executing, with the object of putting it beyond the power of the Legislature to render such provisions nugatory by refusing to pass laws to carry them into effect; and where the matter with which a given section of the constitution deals is divisible, one clause thereof may be self-executing and another clause or clauses may not be self-executing. Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed. That a right granted by a contsitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self-executing; nor does the self-executing character of the constitutional provision necessarily preclude legislation for the better protection of the right secured. A constitutional provision which is merely

declaratory of the common law is self-executing. A constitutional provision designed to *remove an existing mischief* should not be construed as dependent for its efficacy and operation on legislative will."

One of the earliest cases and one of the best considered cases upon this subject is found in 7 Howard, page 14, a Mississippi report, 5 Miss., page 2. The title of the case is *Bryan* v. *Williamson*. The provision of the constitution was under consideration in that case.

"The introduction of slaves into this state as merchandise or for sale shall be prohibited from and after the first day of May, 1833."

The court among other things, says:

"This is the language employed by the highest power in the state."

"In support of our first position, it is proper that we should inquire in the outset, what a constitution is, and how it operates. It is a form of government established by the people, designed for their general welfare, as a society and as individuals."

"In the language of a learned jurist, it was made 'by the people, made for the people, and is responsible to the people.' It is but the frame or skeleton of a government containing the general outline, leaving the detail to be filled up in subordination and auxilliary to the essential and fundamental principles thereby established, but it is not on that account the less binding. It is from its very nature and object the supreme law of the land fixed and unalterable, except by the power that made it. It contains only certain great principles which are to control in all legislation and extend through the whole body politic. That is, principles are of themselves laws. Constitutions do not usually provide this insurance obtained by prescribing penalties that merely declare the rule or establish the principle, which, being paramount, makes void whatever is repugnant to it, its mandates or principles, binding by a moral law. * * *"

"We may assert without the shadow of a doubt, that the convention did intend that the importation of slaves into this state as merchandise should be prohibited after the first of May, 1833, whether by force of the constitutional provision or by legislative enactment, and having so intended and declared it through the Constitution, it became as much a fundamental and

fixed principle in the Government as any other principle or provision whatever. It became by that mere declaration *proprie vigore* a law, and whether it may be supposed to be defective in not providing all the means necessary to enforce the prohibition makes no difference, providing it can by any means be carried into effect. Even if it was intended only as a mandate to the Legislature, its operation was to be on the citizens generally; it was not designed as one of those provisions which expend their full force in declaring and regulating the action of the legislative body, but its design was after that date to protect the people against a supposed evil. A time was fixed at which the evil should be prohibited; from that time it was a law in full force. The Legislature could not defeat it by removing prohibition, and this shows that it had an existing operative force; having that existing operative force it was not liable to be defeated by omission. It was one of those principles which required no legislative aid to give it strength, although some may think that its strength was susceptible of a more efficient application by legislative act. When the people prescribed the constitutional form of government, they ordained that every part of that form must have its appropriate effect; every principle is to be regarded as fundamental and self-executing. A constitution need do nothing more than declare first principles.''

In line with this is the case of *Gherns* v. *State*, 16 Arizona, page 344:

''The prohibition amendment to the Constitution which in Section 1 prohibits the manufacture in or introduction into the state of any intoxicating liquor and punishes any person who manufactures or sells or introduces into the state intoxicating liquors, and which declares in Section 2 that the Legislature shall, by appropriate legislation, provide for carrying into effect of the amendment and which provides in Section 3 that the amendment shall take effect and be in force after January 1, 1915, is, when considered as a whole, self-executing, and Section 2 merely imposes on the Legislature the duty of enacting appropriate legislation for enforcement of prohibition; 'appropriate' meaning suitable, fit, befitting, proper.

''Constitution, Article XXII, Section 21, requiring the Legislature to enact all necessary laws to carry into effect the provisions of the Constitution, grants no power to the Legislature, and the duty it seeks to impose exists without the provision.

''A self-executing provision of the Constitution does not necessarily exhaust legislative power on the subject, but any

legislation must be in harmony with the Constitution and further the exercise of constitutional right and make it more available.''

To the same effect is *State of New Mexico, ex rel Lozenzo Delgado,* v. *Eugenio Romero, Treasurer,* 17 New Mexico, page 81:

''The last clause of Section 1, of Article X of the Constitution of New Mexico, which reads as follows: 'And no county officer shall receive to his own use any fees or emoluments other than the annual salary provided by law, and all fees earned by any officer shall be by him collected and paid into the treasury of the county,' is self-executing.

''The mere fact that legislation might supplement and add to or prescribe a penalty for the violation of a self-executing provision of a constitution, does not render such a provision ineffective in the absence of such legislation.

''If a constitutional provision, either directly or by implication, imposes a duty on an officer, no legislation is necessary to require the performance of such duty.''

To the above may be added *People, ex rel Ely,* v. *Rumsey,* 64 Ill., page 44:

''A constitutional provision designed to remove    all existing mischief should never be construed as dependent for its efficacy and operation upon legislative will.''

I think authorities could be multiplied to show that when the Constitution through the voice of the people has spoken against an existing mischief and declared its    fiat against the same, that this becomes the fundamental law of the land, and if, after a certain date, the doing of a certain act is prohibited, then to do that act is to transcend and to break the highest law ordained by the people, to-wit, the Constitution, and nothing more is needed to make the same any more unlawful than the very word of the Constitution itself.

Also see Cooley's Constitutional Limitations (7th Ed.), p. 121, where the following is found:

'' A constitutional provision may be said to be self-executing if it supplies a sufficient rule or means by which the right given may be enforced or protected, or the duty imposed may be performed.''

This is the view entertained by the Attorney-General in an opinion rendered May 5th, 1919, wherein this language is used:

"While the question is much encumbered with doubt, I advise that until the question has been judicially determined, the provision of the prohibition amendment may be looked to as furnishing the definition for unlawful sales as contemplated by the provisions of Section 13195, General Code, providing a penalty for the keeping of a place where the liquor is sold in violation of law."

After May 27, 1919, the selling, giving or furnishing of intoxicating liquor as a beverage was prohibited by the Constitution and the General Assembly were authorized to enact laws "to make this provision effective." Suppose the legislature met immediately for that purpose, after that date, and upon the statute books they found Sec. 13195 which says that

"Whoever keeps a place where intoxicating liquors are sold, furnished or given away in violation of law shall be fined, etc."

Would it make it any more in violation of law or unlawful to enact another statute?

Now, if the Constitution was the highest law of the land, then whoever sold, furnished or gave away liquor after that date did so in violation of law. This expression "in violation of law" as used in Sec. 13195 has been judicially determined in this state in many cases, its first construction being in *Lynch* v. *State*, 12 C. C. (N.S.), page 330; affirmed without report, 81 O. S., 489, page 333. Judge Donahue, now upon the Federal bench, uses this language:

"It is not important what law is violated in the sale of intoxicating liquors under a charge of this character. It is sufficient for the affidavit to state the sale was unlawful, and then in the hearing of the case proof can be offered that the sales were made on Sunday, to a minor, or person in the habit of becoming intoxicated, or in territory where the sale of intoxicating liquor is prohibited *or any other* reason that renders the sale unlawful."

And what is contemplated in the language "in violation of

.law" appears in the case of *Herman* v. *State,* a well considered opinion by Judges Donnelly, Kinder and Crow in the circuit court of Allen county, which was affirmed in the supreme court without report, 88 O. S., page 584. This case involved a sale to minors. The same expression "in violation of law" as used in Sec. 13195, has been considered in *Saunders* v. *State,* 20 C.C.(N.S.), page 295; *Post* v. *State,* 14 C. C., 111; *Pfaff* v. *State,* 1 Ohio App., Rep., 306, 20 C.C. (N.S.), 395.

The language of General Code, 13195, as to "unlawfully keeping a place" for sale of intoxicating liquors is not limited. to dry territory, but includes unlawfully keeping a place on Sunday.

Again adverting to 12 C. C. (N. S.), page 333 the court uses this language:

"It is sufficient for an affidavit to state the sale was *unlawful,* and then in the hearing of the case proof can be offered that the sales were made on Sunday * * * *or any other reason that renders the sale unlawful.*"

The provision in the amendment to the Constitution prohibiting a sale of intoxicating liquors can hardly be regarded otherwise than a reason that renders the sale of such liquors unlawful; under said amendment the sale of intoxicating liquors is either lawful or unlawful. There can be no neutral ground. If the Constitution is the supreme law of the land, then such sales in violation of such Constitution makes such sales not lawful, and if the sale is not lawful, then it must be unlawful; hence, "in violation of law" for that is the legal definition of the word "unlawful." Therefore, the conclusion must follow that if such sale is in violation of the Constitutional Amendment, it is made "in violation of law."

Now if the Legislature found Sec. 13195 upon the statute books of Ohio, which provided a penalty for the keeper of a place where liquors were sold "in violation of law" and if any one who did so sell after that date violated the highest law of the state, to-wit, the Constitution, in so doing, what further act of the Legislature was necessary? Again, another view of

this amendment is that the same is effective without a penalty being enacted; C. J., Vol. 16, Sec. 29 states:

"The doctrine is well settled that where a statute either makes an act unlawful, or imposes a punishment for its commission, that is sufficient to make an act a crime without any expressed declaration to that effect."

And in Sec. 30, after stating that it has been held in some cases that the mere defining of an act necessary to constitute a crime does not make such act a crime unless punishment is annexed it is said:

"On the other hand it is held where the statute prohibits any matter of public grievance or commends a matter of public convenience, although no penalty is prescribed for disobeying its prohibition or commands, an indictment will be sustained."

Authorities could be added to the principle that a crime may be complete without the penalty annexed thereto, insofar as the unlawfulness of the act is concerned. I am therefore constrained to the conclusion, considering this question from any standpoint, that the Constitutional Amendment became effective May 27, 1919; that whosoever "sold or furnished liquor or gave away the same as a beverage after that date, did so in violation of law, and that he was liable under Sec. 13195 to the penalties thereof.

That such a provision, as the one under consideration, is self-executing is supported by the following authorities and cases cited therein. 33 Am. & Eng. Ann cases, 1116; 7 Eng. Ann cases, 627; 16 L. R. A., 281-282.

Coming now to some of the questions involved in the various cases, I take up the one as to whether a former conviction on which error has been prosecuted, but not finally determined, can be made a basis of a charge of a second offense.

This question arises in the record in two cases—that against Constantine Vestimean, and one of the cases against Nick Datesh. In the first of these cases, to-wit, Vestimean, there appears a stipulation as follows (on page 27 of the record):

"It is admitted by counsel for the defendant that the de-

fendant, Constantine Vestimean, from the 15th of July to the
8th day of September, 1919, was charged with keeping a place
where intoxicating liquors were sold, contrary to Section 13195
and that on September 12, 1919, the said defendant plead guilty
to said charge and was fined $300 and the costs of prosecution,
and that the defendant, Constantine Vestimean, is the same
Constantine Vestimean as in the former case."

And it further appears that no error was prosecuted for that
judgment; hence, there can not be said to be an error proceed-
ing pending to the first conviction. In the one case against
Nick Datesh the record discloses that during the pendency of
the error proceedings to the first conviction, the second was had
and an order of abatement made. As to this case of Nick Datesh
I am unable to agree with counsel for the state that a conviction
is a conviction until reversed upon error, although there is
some authority to that effect, but in 16 C. J., page 1341, Sec.
3155, is found this language:

"Since the word conviction when made the ground of some
disability or special penalty means a final adjudication by judg-
ment in a jurisdiction where it is necessary for a conviction to
precede the commission of the second or subsequent offense in
order to inflict the enhanced penalty following a second con-
viction, it has been held that sentence must be pronounced on
the former conviction and that the judgment thereon must be-
come final. 224 Pa., 363."

Now, the record discloses that in this case Datesh was fined
$500 and the order given to abate the place. He might have
been fined the $500 under a first offense. So that, if the order
of abatement was eliminated and the judgment of the court
below reversed to that extent, this judgment might stand under
the fine of $500. The practice, would, however, seem to be to
remand the case to the trial court for a resentencing, under the
authority of *Pickett* v. *State*, 22 O. S., 405, 4th Syl. and *Carey* v.
*State*, 70 O. S., 121. This matter of the abatement of the place
is no part of the penalty, insofar as the sentence is concerned,
for G. C., Sec. 13195 recites for a first offense—
"shall be fined not less than $100. nor more than $500, and
for every subsequent offense shall be fined not less than $200
nor more than $500."

The section then goes on to recite that upon a conviction for a second or subsequent offense, the court shall order the place where such liquor is sold, etc., to be abated as a nuisance. Hence the conviction of Datesh was rightful enough under the evidence and the sentence as to the amount of the fine within the statute, but in my opinion, insofar as the same seeks to order an abatement of the place as upon a second offense, I believe the judgment to that extent should be reversed and the cause remanded for a new sentence.

Now, as to the defendant Vestimean, no such a situation arises in his case; there was no error proceeding pending to his first conviction, there was final judgment thereunder and the order of the abatement was entirely proper under G. C., Sec. 13195.

This brings me to a consideration of the question as to whether or not the court erred in denying certain of these defendants trials by jury, and the authority relied upon is found in *Sanders Post & Pfaff* v. *State*, 1 App., Rep., page 306 and 20 C. C. (N.S.), page 395. On page 398 in the latter citation, after discussing the provisions of the General Code with reference to hearing cases of this character without the intervention of a jury, the Court of Appeals used this language:

"That, upon a second conviction, the defendant's place may be abated as a nuisance and the constitutional right to a jury trial would then accrue to him, and that by force of the second, therefore, need not now be discussed, for obvious reasons. A second offense was not charged."

Now, in the Ohio App. Rep., the language is somewhat different and on page 311 the following is the language:

"Upon a second conviction, the defendant's place may be abated as a nuisance and the constitutional right to a jury trial would then accrue to him, which, therefore, need not now be discussed for the obvious reason that a second offense was not charged."

So that, in the C. C. (N. S.), language the words "that," and that "by force of the second," do not appear in the Ohio App. Rep. language.

A consideration of the record in this case of *Sanders et al v. State*, the facts upon which the same arose and the holding of the court as set out in the syllabus of both reports indicate that no holding is made to the effect that a jury trial is essential when the court considers a second conviction. I am inclined to think that the report in the 20 C. C. (N. S.), was an opinion taken down at the time of the announcement and the language of the court would indicate, to my mind, that there was intended to be said, after discussing the right to a trial by jury

"That (as to the question) upon a second conviction the defendant's place may be abated as a nuisance and that a constitutional right to a jury trial would then accrue to him, and that by force of the second (conviction), therefore, need not now be discussed for obvious reasons. A second offense was not charged."

It is very apparent, to my mind, that the court in that case was expressly not determining the question as to whether a jury trial was necessary upon the hearing for a second offense. The language used would seem, to my mind, to expressly disclaim an intention of passing any opinion upon that subject or discussing it, as they say, for the obvious reason that no second offense was charged. There was no reason in the case for the discussion of this matter, as the court itself admits, and no reason or argument is given as to why the defendant should have a jury trial upon a second conviction, under G. C., Sec. 13195.

The only basis that I can see for granting a jury trial in a second conviction is, that part of the penalty may involve the abatement of the place and hence, a taking of property, necessitating the intervention of a jury trial in order to comply with the constitutional provision "by due process of law." "The constitutional right to trial by jury applies only to cases in which the prerogative existed at common law or was secured by statute at the time the constitution was adopted; and not in those cases where the right and the remedy with it are thereafter created by statute, nor *where the cause was already a sub-*

*ject of equity jurisprudence.''*   16 R. C. L. (Ruling Case Law), pages 194, 195.

A solution of this problem, therefore, rests upon the question as to whether or not in the abatement of a nuisance by order of court, the intervention of a jury trial is a constitutional right.   20 R. C. L., page 484, uses this language:

''In the case of public nuisances where the application is for an injunction only, no damages being demanded, it seems to be settled that constitutional guarantees do not require a trial by jury.''

In Woollen and Thornton, the Law of Intoxicating Liquors, page 256, this language:

''Not only has the state the power to regulate or prohibit the sale of intoxicating liquors, but it has the power to declare that the keeping of them—even though not for sale, it would seem—and the buildings wherein they are kept, shall be deemed a nuisance.  In Iowa, a statute provided, if in either a civil or criminal case, the existence of a nuisance be established where intoxicating liquors was involved, the court should enter a judgment abating the nuisance and direct a seizure and destruction of the liquor and a removal and sale of the fixtures and furniture used on the premises held for either the manufacture or sale of the liquor.  This was held to be a valid statute.  'The appellee,' said the court, 'contend that though they did create and maintain nuisances as alleged, no decree should be entered against them for the seizure and destruction of their liquors, nor for the removal and sale of furniture and fixtures, because the law authorizing the same is in conflict with Amendments IV and XIV to the Constitution of the United States, and Sections 8 and 9, Bill of Rights, and Article III, Constitution of Iowa.  Their contention is that property of an individual can not be confiscated or forfeited by legislative enactment, but only by the judgment of a court, in accordance with due process of law, and that by said laws the Legislature forfeits the property in question and does not leave such forfeiture to the court; that property can not be forfeited by an action against the person, but must be by action against the thing, and that in a criminal case for nuisance the property is not involved, and that the defendant is entitled to his day in court upon the question of forfeiture of his property.  We understand the law to be that property of individuals can not be

forfeited by legislative enactment; that such forfeitures can only be by the judgment of a court of competent jurisdiction, in a proper case, after due notice. This statute does not forfeit property by legislative enactment, but, as in many other instances, authorizes and requires the courts, in cases where it has been established upon judicial investigation that property is such, or has been so used, as to constitute a nuisance, to abate the nuisance by destroying and selling the property. It is only by the judgment of a court that any person may rightfully destroy liquors found upon the defendant's premises described, or removed therefrom and sell the furniture, fixtures, etc., therein. In actions, either criminal or equitable, wherein the existence of a nuisance is established under the law in question, the action is against the thing in the place, as well as against the persons. In either case the question is whether the place was a nuisance, and, if so, then whether the person was engaged in keeping it. Such actions are against the thing, as well as the persons, and the person has due notice, and his day in court, in which to defend against the forfeiture of his property as well as the punishment of himself.' The abatement may be authorized by proceedings in chancery. The Legislature may even authorize a municipality to declare the keeping of liquors to be a nuisance.''

In the case of *Muggler* v. *Kansas*, 123 U. S. Rep., pages 623-672, after discussing the 13th section of the Kansas act with reference to abatement of places where liquors are manufactured and sold contrary to law, is this language:

''Equally untenable is the proposition that proceedings in equity for the purposes indicated in the thirteenth section of the statute are inconsistent with due process of law. 'In regard to public nuisance,' Mr. Justice Story says, 'the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights and property * * *. In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction.' 2 Story's Eq. pa. 921, 922. The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy, than

can be had at law. They can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury. (Authorities cited.)

"As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required in suits in equity brought to abate a public nuisance."

The basic distinction should be recognized that when an action is maintained at law for damages caused by the creation and maintenance of a nuisance, a jury trial should be had for the purposes of measuring the damages to which the plaintiff may be entitled—that constitutes a taking of property within the meaning of the constitution and was a right recognized by the common-law; but in cases of this character, when the thing itself is determined to be a nuisance and the action is against the keeper of the place for the maintaining of the nuisance, the abatement is directed against the maintenance of the place as a place where liquor is sold unlawfully and this calls for the exercise of a chancery jurisdiction, to-wit, to stop the unlawful procedure and to abate the place, insofar as it is maintained as a place for the unlawful sale of liquor. It is not an action for damages but is in the nature of an injunction, to restrain the further violation of law in the maintenance of the so-called nuisance. Without multiplying authorities upon this proposition, I have reached the conclusion that in the trial of a second offense, when the court, pursuant to the state, has ordered an abatement of the place as a nuisance, a jury trial is not a constitutional right to which the defendant is entitled. Hence, I am constrained to the conclusion that these petitions in error, insofar as Vestimean and Datesh are concerned, should be denied upon that point, to-wit, the right to a trial by jury.

In the Trommenschlager case there is a point urged that a confession was introduced before the proof, the *corpus delicti*, but an examination of the evidence as presented in the bill of exceptions does not convince me that the case is beyond the principle as recognized in the case of *Kohn* v. *State*, 14 C. C. (N. S.), page 31 which holds:

"In the prosecution for arson, a judgment of guilty will not be reversed because of failure to establish the *corpus delicti*. Evidence tending to incriminate the defendant was introduced where the burning of the property was not disputed and the same evidence which established criminal agency also bore upon the question of the guilt of the accused."

The proof of the essential elements going to make up the crime charged might concurrently appear, together with the proof of the alleged confession, and on page 5 of that record it appears without objection:

"I asked him if he was the sole proprietor and he said he was the sole proprietor. That is all."

Of course, later on in the record, objection appears to have been made, but having already admitted the testimony without objection, this point is futile to the plaintiff in error, and in any event, I doubt whether it transcends the rule of the Knapp case, even if everything that the plaintiff in error claims in the premises should be granted, for it is inherently so much a part of the proof of the corpus delicti that no valid claim can be made for a reversal upon that ground.

In the case against Margo two witnesses, one George Schild and John Heilman were called upon the part of the defendant to testify.

As to Schild, an objection was made in the trial court upon the ground that there was an order for separation of the witnesses for the State and defense made before the introduction of the testimony, said order having been made at the beginning of the trial.

Now, I think it is conceded that certain witnesses in question remained in the room with the full knowledge of counsel

for defendants during the taking of the testimony on the part
of the State, and that likewise it was well known by court and
counsel upon both sides and the witnesses, that an order had
been made excluding all persons, who expected to testify in
the case, from the room.

The law in the State of Ohio, I think may be stated as fol-
lows:

"It is error, affording ground of reversal, to exclude evidence
of a witness upon the ground that he had remained in court
during part of the trial, and had heard other witnesses testify,
and in so doing had violated an order of the court for the sep-
aration of the witnesses, neither the prisoner nor his counsel
having encouraged such violation, and the witness being ignor-
ant of the order: *McHugh* v. *State*, 42 O. S., 154, IV Longs-
dorf's Notes, 100.

"While the court is vested with discretion to refuse or per-
mit the examination of a witness who has remained in court,
by procurement or connivance of the party calling him, in
violation of an order for the separation of witnesses, it is vested
with no such discretion to prevent such examination where there
has been no such procurement or connivance." *Dickson* v.
*State*, 39 O. S., 73, 111 Longsdorf's Notes, 1009.

So that the underlying question is whether or not the court
abused his discretion in the premises in refusing these wit
nesses to testify after he had made the order, with full knowl-
edge of counsel and parties in the premises. If the court be-
lieved that the remaining in the room of these witnesses after
his order had been encouraged or allowed or procured or con-
nived at by the parties calling them, in violation of his order
for separation, he then had a right in his discretion to refuse
to permit them to testify. A determination of such question
must largely be left to the trial judge, for he saw all persons,
knows what took place in his court room and in his presence
and of the conduct of counsel and parties in the premises. The
court below seems to have reached the conclusion that the re-
maining in the room of these witnesses was with knowledge and
consent of the counsel in the case, and if such were the facts,
I could not set aside the verdict for the refusal of the court
to permit the witnesses to testify. Necessarily, much discretion

must be placed in the hands of the trial court, and unless this discretion is abused, a judgment should not be disturbed upon that ground. Both of these witnesses were more or less clearly associated with the defendant Margo and were habituees of his place of business, and they were in attendance upon the trial, doubtless, for rendering such assistance as might be necessary. Counsel informed the court, when the order of separation was made, that they did not know that they would put them on; hence, they knew that these two, Heilman and Schild, were in the room, during the progress of taking testimony, after the court had made the order. It would seem to me that counsel might well have anticipated that if something during the progress of the state's testimony should develop which they, two habituees of Margo's place, might know something about, they would be more or less important witnesses. Hence, the safer plan by far would have been to have excluded them with the other witnesses, and then if it should develop that their testimony was desired, there would be no disability connected with their testifying.

It might well be argued that it was hardly fair to the state to permit such persons, who might or might not be witnesses, to remain in during the taking of the testimony, and then, if anything developed which they might be used to rebut, to put them on. The entire circumstance surrounding the conduct of the trial leads me to the conclusion that the court below was within the McHugh and Dickson cases cited above.

Again, the record discloses by the offer to prove as to the witnesses Schild and Heilman that these witnesses would testify that of their own knowledge they knew there was no liquor upon the premises in question in the month of September, or words to that effect. Now, this would be highly important testimony, and yet the excuse offered for not excluding them from the room, when the court ordered, was the fact that counsel were uncertain as to whether or not they would call either of these witnesses. Now, if the witnesses would have testified to the highly important fact as to whether liquor was on the premises or not in the month of September, and counsel were uncer-

tain as to whether to call them or not, either there was a lack of confidence in the witnesses themselves or the court was right in his conclusion that they had remained in the room with the knowledge of the parties and their counsel, and hence, was within the rule as laid down in the Dickson case.

I believe I have touched upon all the chief points in the records, all voluminous, and it may be there are some I have not reached in expressing my views, but I believe that the essential claims have been reviewed. The basic question is not a new one in this state and many similar cases have arisen involving this and other questions. Judge Smith in Jefferson County Court of Common Pleas on January 19, 1920, rendered a very able opinion construing this statute, and the constitutional rights of the various plaintiffs in error, as appeared in the records presented to him. The questions were entirely similar and he reached the conclusion that the judgments of conviction should be sustained.

I am, therefore, of opinion that none of these judgments of conviction in any of these cases, excepting the second case against Nick Datesh, should be disturbed, and they are therefore affirmed. As to the second case against Nick Datesh, the same is reversed insofar as the abatement order is concerned and the cause remanded to the criminal court of the city of Canton for a re-sentencing. In all other respects the judgment is affirmed.